APPEAL NO. 22-5811

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

*IVA JOY and WILLIAM JOY v. AMGUARD INSURANCE COMPANY v. ANTHONY
LANCASTER INSURANCE AGENCY*
+

On appeal from the U.S. District Court for the Western District of Tennessee
Trial court docket no. 1:20-cv-01131-STA-jay
Presiding district judge: S. Thomas Anderson

<u>**THIRD AMENDED BRIEF OF APPELLANT AMGUARD INSURANCE COMPANY**</u>
(ORAL ARGUMENT REQUESTED)

Brian F. Walthart (Tenn. Bar No. 02477)
McAngus, Goudelock & Courie, LLC
Post Office Box 2949
120 Brentwood Commons Way, Suite 625
(37027)
Brentwood, Tennessee 37024
Phone: (615) 499-7292
Facsimile: (615) 523-1496

.

## <u>CORPORATE DISCLOSURE</u>

Appellant AmGuard Insurance Company ("AmGuard"), a Pennsylvania corporation, is a wholly owned subsidiary of WestGuard Insurance Company, a Pennsylvania corporation, which is a wholly owned subsidiary of National Indemnity Company, a Nebraska corporation, which is a wholly owned subsidiary of Berkshire Hathaway, Inc., a Delaware corporation. Berkshire Hathaway, Inc. has no parent company, and no publicly traded company owns more than 10% of Berkshire Hathaway, Inc.'s stock.

## **TABLE OF CONTENTS**

COVER                                                                           1

CORPORATE DISCLOSURE                                                            2

TABLE OF CONTENTS                                                               3

TABLE OF AUTHORITIES                                                            4

STATEMENT IN SUPPORT OF ORAL ARGUMENT                                           7

STATEMENT OF JURISDICTION                                                       8

STATEMENT OF ISSUES                                                             9

STATEMENT OF THE CASE                                                          10

SUMMARY OF THE ARGUMENT                                                        23

ARGUMENT                                                                       26

CONCLUSION                                                                     49

SIGNATURE                                                                      50

CERTIFICATE OF COMPLIANCE                                                      51

CERTIFICATE OF SERVICE                                                         52

ADDENDUM                                                                       53

## TABLE OF AUTHORITIES

*ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)          48

*Bauer v. Mutual of Omaha Ins. Co.*, 460 S.W.2d 366 (Tenn. Ct. App. 1969)          27

*Beasley v. Metro. Life Ins. Co.*, 229 S.W.2d 146 (Tenn. 1950)          43, 44, 45, 46

*Broyles v. Ford Life Ins. Co.*, 594 S.W.2d 691 (Tenn. 1980)          33

*Certain Underwriter's at Lloyd's of London v. Transcarriers Inc.*, 107 S.W.3d 496 (Tenn. Ct. App. 2002)          40

*Conley v. Tenn. Farmers Ins. Co.*, No. W2017-00803-COA-R3-CV, 2018 Tenn. App. LEXIS 428, *1, 4 2018 WL 3561725 (Tenn. Ct. App. July 24, 2018)          36

*De Ford v. Nat'l Life & Acc. Ins. Co.*, 185 S.W.2d 617 (Tenn. 1945)          43, 44

*Dutton v. Tenn. Farmers Mut. Ins. Co.*, 577 S.W.3d 222 (Tenn. Ct. App. 2018)          36

*Elliot v. Life of the South Ins. Co.*, 296 S.W.3d 64 (Tenn. Ct. App. 2008)          46

*Estate of Howard v. First Cmty. Bank*, no. E2007-02391-COA-R3-CV, 2009 Tenn. App. LEXIS 93, *29, 2009 WL 499541 (Tenn. Ct. App. Feb. 27, 2009)          30, 32, 33

FED. R. EVID. P. 401          37

FED. R. EVID. P. 402          37

FED. R. EVID. P. 403          37, 38

*Freeze v. Tenn. Farmers Mut. Ins. Co.*, 527 S.W.3d 227 (Tenn. Ct. App. 2017)          26, 31

*Giles v. Allstate Ins. Co.*, 871 S.W.2d 154 (Tenn. Ct. App. 1993)          45, 46

*Ginn v. Am. Heritage Life Ins. Co.*, 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004)          40

*GRW Enters. v. Davis*, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990)          40

*Hardin v. Combined Ins. Co. of Am.*, 528 S.W.2d 31 (Tenn. Ct. App. 1975)          44, 45, 46

*Jesmer v. Erie Ins. Co.*, 2021 U.S. App. LEXIS 29693, WL 4473396 (6th Cir. Sept. 30, 2021)          27, 42

*Kentucky Cent. Life Ins. Co., v. Jones*, 799 F. Supp. 53 (M. D. Tenn. 1992).    33

*Lawhon v. Mt. Life Ins. Co.*, No. E2011-00045-COA-R3-CV, 2011 Tenn. App. LEXIS 627, *11,
2011 WL 5829726 (Tenn. Ct. App. Nov. 21, 2011)    29, 44

*Little v. Washington Nat'l Ins. Co.*, 241 S.W.2d 838, 840 (Tenn. Ct. App. 1951) (emphasis
added).    30

*Lloyd v. Farmers Mut. Fire Ins. Co.*, 383 SW 2d 542 (Tenn. Ct. App. 1992)    36

*Merrimack Mut. Fire. Ins. Co.*, 59 SW 3d 142, 147 (Tenn. Ct. App. 2001)    38

*Montgomery v. Reserve Life Ins. Co.*, 585 SW 2d 620 (Tenn. Ct. App. 1979)    45

*Omaha Property & Cas. Ins. Co. v. Johnson*, 866 S.W.2d 539, 541 (Tenn. App. 1993)    38

*Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986)    40

*People's Bank v. Troutman*, E2014-01150-COA-R3-CV-2015 Tenn. App. LEXIS 600, *19-20
2015 WL 4511540 (Tenn. Ct. App. July 27, 2015)    39

*United States Roller Works, Inc. v. State Auto Prop. & Cas. Ins. Co.*    39

*Sine v. Tenn. Farmers Mut. Ins. Co.*, 861 S.W. 2d 838 (Tenn. Ct. App. 1993).    28, 31

*Smith v. Tenn. Farmers Life Reass. Co.*, 210 SW 3d 584 (Tenn. Ct. App. 2006)    33, 35

*Spears v. Commercial Ins Co.*, 866 S.W.2d 544, 548 (Tenn. App. 1993)    38

*Individual Healthcare Specialists, Inc., v. Blue Cross Blue Shield of Tenn., Inc.*, 566 S.W.3d 671,
694-95 (Tenn. 2019)    38

*State Auto. Mut. Ins. Co. v. R.H.L., Inc.*, No. 07-1197, 2010 U.S. Dist. LEXIS 23390, *20, 2010
WL 909073 (W.D. Tenn. Mar. 12, 2010)    29

TENN. CODE. ANN. §56-7-103.    26, 28, 33, 34, 35, 36, 42, 45, 46

TENN. CODE. ANN. §56-7-105.    40

TENN. CODE ANN. § 56-7-135    46

*Tompkin v. Phillip Morris USA, Inc.*, 362 F. 3d 882, 897 (6th 2004)      37

*Twenty Holdings, LLC v. Land South TN, LLC*, No. M2018-01903-COA-R3-CV, 2019 Tenn. App. LEXIS 438, *19-20, 2019 WL 4200970 (Tenn. Ct. App. Sept. 5, 2019) (internal citations omitted).      44

*United American Bank v. Gardner*, 706 S.W.2d 639, 641 (Tenn. Ct. App. 1985)      39

*Vermont Mut. Ins. Co. v. Chiu*, 21 SW 3d 232, 237 (Tenn. Ct. App. 2000)      31, 33, 34

*Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Financial Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997)      26

*Womack v. Blue Cross & Blue Shield*, 593 S.W. 2d 294 (Tenn. 1990).      27

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant AmGuard Insurance Company ("AmGuard") requests oral argument in this case. This case involves nuanced aspects of Tennessee law, and the interplay between them. When coupled with the fact pattern, this Court would benefit from the opportunity to questions counsel on the legal issues and their interplay with each other, as well as with the facts.

Even the district court was concerned about the detailed legal complexities of the case. Judge Anderson observed, "And I do have concern that, as I mentioned yesterday, there are several what I refer to as nuanced issues in this case. But I have a concern that if we're not careful, we're going to get so detailed and into the finites of the law, that the jury could get totally and completely confused. That's a big concern of mine in this case. … Factually, it seems like a straightforward case. But as the attorneys are aware, the law can be much more complex and complicated in these areas." **Transcript, R. 168, p. 2095-2096.**

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this case under 28 U.S.C. § 1332. Plaintiffs Iva and William Joy ("Plaintiffs") are residents of Tennessee sue AmGuard Insurance Company, a foreign corporation, for greater than $75,000. **Complaint, RE 34, PageID# 378.** Although Third Party Defendant Anthony Lancaster Insurance Agency, Inc. is a Tennessee corporation, **Third Party Complaint of AmGuard Insurance Company, RE 39, PageID# 413**, the trial court had supplemental jurisdiction to hear AmGuard's case against it. *See* 28 U.S.C. § 1367(a) ("district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the … Constitution").

This appeal is timely under Fed. R. App. P. 4(a)(1)(A). On June 29, 2022, the district court entered its judgment. **Judgment, RE 153, PageID# 1484.** On July 12, 2022, AmGuard filed its Rule 50 Motion for Judgment as a Matter of Law, which the district court denied on September 8, 2022. **Order Denying AmGuard's Rule 50 Motion for Judgment as a Matter of Law, RE 163, PageID# 1596.** On September 12, 2022, AmGuard filed its timely Notice of Appeal. **Notice of Appeal, RE 164, PageID# 1611**.

The district court's denial of AmGuard's Rule 50 Motion was a final order, disposing of all claims and defenses of all parties. Thus, this Court has jurisdiction to entertain and decide this appeal. *See* Fed. R. App. P. 4.

## STATEMENT OF ISSUES

1.  Whether the trial court erred in ruling that Plaintiff Iva Joy's misrepresentation did not increase AmGuard's risk of loss under TENN. CODE ANN. § 56-7-103.

2.  Whether the trial court erred by admitting AmGuard's internal, aspirational procedure whereby it would endeavor to confirm independently if an insured had automatic sprinklers.

3.  Whether the trial court should have granted AmGuard's motion under Rule 50 at the close of Plaintiffs' proof; whether there is sufficient evidence to support a verdict against AmGuard.

4.  Whether the jury verdict is consistent, given the trial court's denial of AmGuard's Rule 50 Motion.

## STATEMENT OF THE CASE

This appeal arises out of a jury trial that took place on June 27 - 29, 2022. **Exhibit and Witness List, RE 152, PageID# 1482**. Some background understanding is, of course, necessary.

On June 16, 2020, Plaintiffs Iva and William Joy filed their complaint against several defendants, including AmGuard Insurance Company ("AmGuard"). **Complaint, RE 1, PageID# 17**. Subsequently, Plaintiffs filed a First Amended Complaint, naming AmGuard as the only Defendant. **First Amended Complaint, RE 34, PageID# 378**. In their amended pleading, Plaintiffs allege their residence was completely destroyed in a fire on May 5, 2000. **First Amended Complaint, RE 34, PageID# 379**. Further, Plaintiffs allege that AmGuard issued a policy of homeowners insurance and wrongfully failed to pay under the policy. **First Amended Complaint, RE 34, PageID# 379-380**. Plaintiffs' basis for claiming AmGuard's denial of benefits was wrongful is that an independent insurance agent, Anthony Lancaster Insurance Agency, Inc. (hereinafter "Lancaster Agency") "completed an electronic homeowner's application" for a homeowners policy and the "application was ambiguous regarding sprinkler systems." **First Amended Complaint, RE 34, PageID# 379**.

The referenced application was introduced into evidence as Trial Exhibits 10 and 11. Trial Exhibit 11 is the Proposal of Insurance. **Proposal of Insurance, RE 56-3, PageID# 586-595.** Trial Exhibit 10 is the signature page for the Proposal of Insurance, and is dated December 17, 2019. **Proposal of Insurance Signature Page, RE 56-3, PageID# 596**. Under "Section V" of the Proposal of Insurance, the document reads "automatic sprinklers" in one column and beside it the words "all areas except attic, bathroom, closet & attached structures." **Proposal of Insurance, RE 56-3, PageID# 594.** Contrary to what was in the application, Plaintiffs' home

did not have automatic sprinklers and Plaintiffs alleged that the Lancaster Agency "knew of should have known" this. **First Amended Complaint, RE 34, PageID# 379**.

On the signature page of the Proposal of Insurance, it states that the proposal "is not a binder." **Proposal of Insurance Signature Page, RE 56-3, PageID# 596**. It further reads, "This summary of policy coverages, premium, and limits is not an insurance policy. For further details about the coverage, please review the policy forms and declarations pages. In the event of a conflict, the terms stated in the insurance policy shall govern." **Proposal of Insurance Signature Page, RE 56-3, PageID# 596.** Although Plaintiffs alleged that the Lancaster Agency completed the application on Plaintiffs' behalf, Plaintiff admitted at trial that she signed *and adopted* the Proposal of Insurance. **Transcript, R. 166, PageID# 1725-1726, 1728, and 1769**; s*ee also* **Proposal of Insurance Signature Page, RE 56-3, PageID# 596.**

While Plaintiffs allegations were vague, in Plaintiffs' pleadings, they alleged the Lancaster Agency made an error on the application and that, by operation of law, the Lancaster Agency's error regarding the insurance application was imputed to AmGuard because "Lancaster completed the application for Plaintiff[s'] coverage" and "AmGuard cannot deny coverage based on the actions of its agent Lancaster." **First Amended Complaint, RE 34, PageID# 380.** As relevant to this appeal, Plaintiffs alleged causes of action for breach of contract and violation of Tennessee's bad faith statute, the latter codified at Tenn. Code Ann. § 56-7-105. **First Amended Complaint, RE 34, PageID# 380, 382**.

On January 6, 2021, AmGuard filed its Answer and admitted that it issued a policy of homeowners insurance and that it denied Plaintiffs' insurance claim, but denied it was liable to Plaintiffs under any legal theory. **Answer to First Amended Complaint, RE 36, PageID# 392-403**. AmGuard alleged that Plaintiffs breached their "duty to disclose information that involved

a material risk to AmGuard" and "fail[ed] to ensure the accuracy of the application before signing it," as well as the "accuracy of the policy as written." **Answer to First Amended Complaint, RE 36, PageID# 397.**

AmGuard filed a third party complaint against Anthony Lancaster Insurance Agency, Inc. ("Lancaster Agency"), alleging that it was liable to AmGuard for indemnity arising out of the agency's breach of the contractual documents between them titled "Agency Brokerage/Agreement and Addendum to Agency/Broker Agreement" (collectively "Agency Contract"). **Third Party Complaint of AmGuard Insurance Company, RE 39, PageID# 414.** The Lancaster Agency denied liability in its Answer, alleging "to the extent that [AmGuard] failed to act in a reasonable manner, it is liable for its own percentage of negligence …" **Answer of Third-Party Defendants, RE 47, PageID# 449-450**.

The Agency Contract, introduced as Trial Exhibit 15, provided that the Lancaster Agency had a duty to "investigate carefully the insurability of all applicants, … and to acquaint [AmGuard] with all facts relevant to the insurability of the risk. … [The Lancaster Agency] "will diligently and to the best of its ability ensure that the facts set forth by any applicant in  any application it solicits are true, correct and contain no misrepresentation or incorrect characterizations." **Agency Contract, RE 39-1, PageID# 418-419.**

An important document to this appeal is Trial Exhibit 4, which AmGuard produced in pretrial discovery, and contains the heading "Automatic Sprinkler Cert/Photo." **Automatic Sprinkler Cert/Photo, RE 57-5, PageID# 618**. Trial Exhibit 4 contains an internal procedure of AmGuard where it would try to confirm the presence of a sprinkler system if the insured's application had indicated the presence of a sprinkler system. *See* **Automatic Sprinkler Cert/Photo, RE 57-5, PageID# 618**. If an insured indicates that the home has sprinklers in the

application, the procedure provides that if, after thirty days, the insured does not provide a photo of the sprinklers, AmGuard should request a photograph set a diary for 15 days. **Automatic Sprinkler Cert/Photo, RE 57-5, PageID# 618**. The internal procedure also provides if, "[a]fter 15 days, if the cert/photo is still not in the file, we will set the follow up conversation and reset our diary for another 15 days. If not received after the full 30 days, we will endorse (Eff. The date of endorsement) the policy to change the Yes to a No." **Automatic Sprinkler Cert/Photo, RE 57-5, PageID# 618**.

Plaintiffs had not seen the Automatic Sprinkler Cert/Photo document prior to December of 2019, the date of the fire. **Transcript, R. 166, PageID# 1754**. It was only after Plaintiffs obtained insurance and after the fire that Iva Joy saw Trial Exhibit 4, the Automatic Sprinkler Cert/Photo. **Transcript, R. 166, PageID# 1754**. Because she never saw the document until after the fire, she never even knew it existed prior to the fire. **Transcript, R. 166, PageID# 1754**. Since Iva Joy did not know the Automatic Sprinkler Cert/Photo document existed while she was applying for insurance with AmGuard, she did nothing in reliance on it. **Transcript, R. 166, PageID# 1755**. It was not until Plaintiffs' filed their lawsuit that they learned of the existence of the internal procedure in Automatic Sprinkler Cert/Photo document, introduced as Trial Exhibit 4. **Transcript, R. 166, PageID# 1755**.

AmGuard filed a Motion *in Limine* to exclude Trial Exhibit 4, arguing that it was irrelevant  and constituted a danger of substantial and unfair prejudice in both AmGuard's defense of Plaintiffs' claim, as well as its third party suit against the Lancaster Agency. **Motion in Limine, RE 108, PageID# 1172-1178**. AmGuard also argued it was inadmissible under the parol evidence rule, and amounted to an attempt to alter or change its contractual obligations to

Plaintiffs. **Motion in Limine, RE 108, PageID# 1172-1178**. The trial court denied AmGuard's

motion. **Order Denying Def.'s Motion in Limine, RE 136, PageID# 1392**.

On December 18, 2019, AmGuard issued homeowners policy number IVHO038445 to

Iva Joy ("Policy"), which as introduced as Trial Exhibit 5. *See* **Policy, RE 56-3, PageID# 492**.

The declarations page of Plaintiff's Policy reads: "As a condition of this insurance, you MUST

maintain the protective devices or services shown below and discussed on form HO 99 83

attached to your policy. You should also be prepared to supply proof of proper maintenance upon

request." **Policy, RE 56-3**, **PageID# 498.** The protective device "shown below" and was

identified as "Sprinkler: in all areas except attic, bathroom, closet & attached structure areas."

**Policy, RE 56-3**, **PageID# 498**. The Policy also included form HO 99 83 08 017 and under

"Definitions," "Protective Devices" are defined as the devices listed "on your declaration pages

that include fire alarms, burglar alarms, sprinkler systems and water sensors." **Policy, RE 56-3,**

**PageID# 501.** That same form also provides:

> If the Protective Devices listed in the Declarations include a Central Station Reporting
> Fire Alarm *or an automatic sprinkler system*, we will not pay for a loss or damage caused
> by or resulting from fire if, prior to the fire, you failed to comply with any conditions set
> forth in Paragraph A. DEFINITIONS of this endorsement.

**Policy, RE 56-3**, **PageID# 501** (emphasis added).  The Policy also provides that AmGuard does

not provide coverage under the Policy "if, whether before or after a loss, an "Insured" has …

[m]ade false statements … relating to this insurance." **Policy, RE 56-3, PageID# 553.**

Throughout this litigation, Plaintiffs alleged they believe "automatic sprinklers" in the

Proposal of Insurance referred to outdoor automatic sprinklers. **First Amended Complaint, RE**

**34, PageID# 380**. Although Plaintiffs testified about having an "irrigation system" at their home,

it was really merely a water hose on a timer. **Transcript, R. 166, PageID# 1688-1689**. William

Joy testified it was "like when…it's during the summer time and somebody has just mowed their

lawn and you see one of those hoses out in their yard, it's the kind of thing that" Plaintiffs were referring to when the said an irrigation system. **Transcript, R. 166, PageID# 1689.**

Iva Joy handled all things insurance-wise for Plaintiffs, and was a detail-oriented woman. **Transcript, R. 166, PageID# 1692-3.** Iva Joy testified she only saw the signed Proposal of Insurance "probably about a month or so ago" before trial. **Transcript, R. 166, PageID# 1724-1725**. Iva Joy admitted that it was her own hand-written signature on Trial Exhibit 10, the Proposal of Insurance Signature Page, and that the terms in it are very important. **Transcript, R. 166, PageID# 1725-28, 1731**. When asked if Iva Joy read the Proposal of Insurance, which she signed, she replied, "Not really." **Transcript, R. 166, PageID# 1734.** Iva Joy confirmed there was nothing about the questions in the Proposal of Insurance that constitutes an issue for her other than the issue with the automatic sprinklers. **Transcript, R. 166, PageID# 1766.**

Iva Joy testified she believes that AmGuard should have followed up and inspected her property to confirm the presence of sprinklers. **Transcript, R. 166, PageID# 1736.** However, the Proposal of Insurance states: "WE MAY, BUT ARE NOT OBLIGATED, TO INSPECT YOUR PROPERTY." **Proposal of Insurance, RE 56-3, PageID# 589.** (all caps in original); *see also* **Transcript, R. 166, PageID# 1736**. Iva Joy admitted that this language is AmGuard is telling her that AmGuard was not required to inspect her property. **Transcript, R. 166, PageID# 1738.** Although Plaintiffs alleged the language used in the application regarding sprinklers was ambiguous, at trial Iva Joy admitted that she had never even read the allegedly ambiguous language before. **Transcript, R. 166, PageID# 1739-1740.** To the question, "You're not here claiming that you got tricked or got into the insurance policy because you didn't understand what [the Proposal of Insurance] meant. You're claiming you didn't read it. Is that correct?" she answered, "No, sir, I didn't read it." **Transcript, R. 166, PageID# 1740.** Iva Joy admitted the

lawn sprinklers that she and her husband testified about at their home were not devices used to protect their house from anything. **Transcript, R. 166, PageID# 1743.** Iva Joy also admitted that the automatic sprinklers referenced in the Policy constitute protective devices; when asked whether that was correct, Iva Joy answered, "Yes, sir, that's what you said." **Transcript, R. 166, PageID# 1751.**

Iva Joy admitted she received the Policy but did not read it. **Transcript, R. 166, PageID# 1730-1, 1754.** She agreed if there was any conflict between the Proposal of Insurance and the Policy, the Policy controls. **Transcript, R. 166, PageID# 1765.**

Iva Joy testified that AmGuard responded to Plaintiffs' filing of the fire claim quickly. **Transcript, R. 166, PageID# 1757.** Within a week of the fire, AmGuard had an inspector at the residence, inspecting Plaintiffs' property to see if the claim was compensable. **Transcript, R. 166, PageID# 1759.** Iva Joy admitted AmGuard was responsive throughout the claims process, "Until time to pay." **Transcript, R. 166, PageID# 1759.** AmGuard timely responded to Plaintiff's reporting of the claim, and AmGuard timely investigated and made a decision about Plaintiff's claim. **Transcript, R. 166, PageID# 1759.**

Very soon after the May 5, 2020 fire, on May 13, 2020, AmGuard served a letter on Plaintiff Iva Joy, introduced as Trial Exhibit 7. **May 13, 2020 Letter to Iva Joy, RE 57-9, PageID# 717, 722**. That letter reads in part:

> We were provided with information prior to issuing the Policy…that the property was equipped with automatic sprinklers in all areas of the insured premises except the attic, bathroom, closet, and attached structure areas. Our investigation after the fire loss revealed that there did not exist any automatic sprinklers in the insured premises. The named insured confirmed during the investigation that there were no automatic sprinklers or fire suppression devices installed in the insured premises. We do not provide coverage to an insured if there was a misrepresentation of any material fact or circumstance and/or false statements made relating to the insurance in the application process. The information provided that there were automatic sprinklers present in the insured premises was a material misrepresentation of fact and/or false statement that increased the risk of

loss to AmGUARD. We fully disclaim coverage for the fire loss due to this material misrepresentation of fact and/or false statement made in your application for the policy.

The policy declarations state that the named insured *must maintain* sprinklers in all areas of the insured premises except the attic, bathroom, closet, and attached structures, *as a condition of this insurance.* A Policy Endorsement also states that it is a *condition of coverage* under Section I Property Coverages that the named insured must maintain all Protective Devices in working order. Protective Devices refers to the devices listed on the declaration pages. In this instance, as noted above, "sprinklers" are a protective device listed on the declaration pages. The Policy Endorsement states that if the Protective Devices listed in the declarations include an automatic sprinkler system, we will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph A. DEFINITIONS of this endorsement. We fully disclaim coverage for the fire loss due to the absence of sprinklers, which were a condition of this insurance and a condition of coverage under the Policy.

**May 13, 2020 Letter to Iva Joy, Trial Ex. 7** (emphasis in original). The letter cited the applicable provisions of the Policy. **May 13, 2020 Letter to Iva Joy, RE 57-9, PageID# 720-722.** Iva Joy agreed that this letter was AmGuard fairly conveying to her the reasons AmGuard denied coverage. **Transcript, R. 166, PageID# 1763.**

AmGuard presented the testimony of Dawn Aigeldinger, assistant vice president of personal lines of insurance (hereinafter "V.P. Aigeldinger"). V.P. Aigeldinger's role within AmGuard is to oversee underwriting operations. **Transcript, R. 167, PageID# 1852**. V.P. Aigeldinger was not involved in the process of evaluating or deciding Plaintiffs' insurance claim. **Transcript, R. 167, PageID# 1852.** She testified, however, to the Policy conditions associated with the protective safeguards. **Transcript, R. 167, PageID# 1852.**

V.P. Aigeldinger testified that the Protective Safeguard endorsement in the Policy was in effect on the date of the May 2020 fire, and that the protective devices listed in the Policy were required for the Policy to be effective. **Transcript, R. 167, PageID# 1854.** V.P. Aigeldinger stated that for the Policy to be effective a sprinkler is required in Plaintiffs' home. **Transcript, R. 167, PageID# 1855.** She confirmed the May 13, 2020 letter introduced as Trial Exhibit 7

constituted AmGuard's position as to why it denied Plaintiffs' insurance claim. **Transcript, R. 167, PageID# 1862, 1864.**

V.P. Aigeldinger testified AmGuard received "from the insured directly…a signed copy of the Proposal of Insurance," marked as Trial Exhibit 10. **Transcript, R.  167, PageID# 1864.** She explained that Exhibit 10 could not be created without creating a full and complete Proposal of Insurance, like the one introduced as Trial Exhibit 11. **Transcript, R. 167, PageID# 1865;** *see also* **Proposal of Insurance, RE 56-3, PageID# 586-595** and **Proposal of Insurance Signature Page, RE 596**. Because Proposal of Insurance Signature Page exists, one can tell a full and complete Proposal of Insurance was created for Iva Joy. **Transcript, R. 167, PageID# 1865.**

V.P. Aigeldinger testified AmGuard's risk of loss was increased because Plaintiffs' "represented that they had sprinklers" when they did not, in fact, have them. *See* **Transcript, R. 167, PageID# 1866;** *see also* **Proposal of Insurance, RE 56-3, PageID# 586-595** and **Proposal of Insurance Signature Page, RE 596,** respectively**.** She explained this is because, in the event of a fire, there would be no sprinklers and a fire is less likely with sprinklers than it is without sprinklers. **Transcript, R. 167, PageID# 1866.** Other than Plaintiffs' misrepresentation about the sprinklers, V.P. Aigeldinger is aware of no other reason AmGuard disclaimed Plaintiffs' claim for insurance. **Transcript, R.  167, PageID# 1867.**

V.P. Aigeldinger explained that Trial Exhibit 4, the Automatic Sprinkler Cert/Photo document was a "Word document … created internally for internal processes." **Transcript, R. 167, PageID# 1867.** The document is not sent or communicated to AmGuard's insureds or agents, because it is an internal, aspirational, manual process. **Transcript, R. 167, PageID# 1868, 1876**. She explained that Trial Exhibit 4 had no bearing on the conditions of the Policy at all. **Transcript, R. 167, PageID# 1868.**

When asked whether AmGuard required people to have sprinklers in their home to insure them, V.P. Aigeldinger explained, "Under this particular policy with the endorsement, it's a requirement." **Transcript, R.  167, PageID# 1871.** If an insured indicated they did not have fire sprinklers, AmGuard could still issue *a policy*; but it would be a *different policy*, with a *different premium*. **Transcript, R. 167, PageID# 1872** (emphasis added). Ms. Aigeldinger testified that the existence of sprinklers in an insured home would reduce of the cost of the premium for the Policy because the risk to AmGuard was lower. **Transcript, R.  167, PageID# 1880.**

Anthony Lancaster testified, and he is the owner of Anthony Lancaster Insurance Agency, Inc. ("Lancaster Agency"); he is an insurance producer for the state of Tennessee. **Transcript, R. 167, PageID# 1790-1**. Mr. Lancaster testified his employee Shunnica Ayers put the information at issue in this case into the system. **Transcript, R. 167, PageID# 1794-5**. Shunnica Ayers helped Iva Joy create the Proposal of Insurance as a licensed insurance agent. **Transcript, R. 167, PageID# 1979.** The information that the Agency's employee, Shunnica Ayers, inputted into the computer system was regurgitated into the Proposal of Insurance. **Transcript, R. 167, PageID# 1981.** Mr. Lancaster explained Plaintiffs were long time customers of the Lancaster Agency. **Transcript, R. 167**, **PageID# 1800-1.** He agreed that the Proposal of Insurance was created just for Iva Joy. **Transcript, R. 167, PageID# 1808**. In order to get a document like the Proposal of Insurance Signature Page, where it says, "Proposal of Insurance for Iva Joy, one must first create the rest of the Proposal of Insurance for Iva Joy," like in Exhibit 11. **Transcript, R. 167**, **PageID# 40;** *see also* **Proposal of Insurance, RE 56-3, PageID# 586-595** and **Proposal of Insurance Signature Page, RE 596.** Mr. Lancaster testified that Section V of the Proposal of Insurance is exactly the kind of information that an insurance agent would ask

of the insured during the application process. **Transcript, R. 167**, **PageID# 1808**. Mr. Lancaster agrees that automatic sprinklers are protective devices. **Transcript, R. 167, PageID# 1810.**

Mr. Lancaster agrees that under the Policy, certain protective devices are required. **Transcript, R. 167, PageID# 1822-3**. Mr. Lancaster represents about twenty different insurance companies; they are all different. **Transcript, R. 167, PageID# 1812**. The only issue with the Plaintiffs' insurance application that Mr. Lancaster is aware of is the central question with automatic sprinklers in all areas except bathrooms, closets, attics, etc.; that is the only source of contention here that Mr. Lancaster is aware of. **Transcript, R. 167, PageID# 1833.**

AmGuard's counsel objected to introduction of Trial Exhibit 4, the Automatic Sprinkler Cert/Photo, **RE 57-5, PageID# 618**, and requested a limiting instruction that the internal process was a parol document and not relevant to the terms of the Policy that AmGuard issued. **Transcript, R. 167, PageID# 1884.** The trial court denied AmGuard's oral motion at trial to read a limiting instruction that Trial Exhibit 4 is not part of the insurance Policy. **Transcript, R. 167, PageID# 1899.** In response, the trial court stated, "the reason that I am considering this approach [i.e. not giving the limited instruction that Trial Exhibit 4 was not party of the Policy] is, one of the exceptions to parol evidence would be unconscionable behavior. That ties into this waiver, estoppel, and bad faith argument." **Transcript, R. 167, PageID# 1900**. The trial judge stated that he would "give it as part of the jury instruction, if I decide it is appropriate". **Transcript, R. 167, PageID# 1900.** The court never gave the instruction.

At the close of Plaintiffs' proof, AmGuard moved under Fed. R. Civ. P. 50 to dismiss Plaintiffs' claims under the Policy. **Transcript, R. 167, PageID# 1909.** AmGuard moved to dismiss Plaintiffs' breach of contract and bad faith claim. **Transcript, R. 167, PageID# 1912-3.** In support, AmGuard pointed out that Plaintiff had not put on any evidence that the Lancaster

Agency committed any negligence or pleaded negligence as a claim that should be imputed to AmGuard. **Transcript, R. 167, PageID# 1914-5.**

After the close of the proof, the jury returned its verdict. The jury answered, "Yes," in response to the question: "Did the Joys prove by a preponderance of the evidence that AmGuard breached the terms of their homeowners insurance policy?" **Verdict, RE 150, PageID# 1453.**

But the jury also answered, "Yes," to the question: "Did AmGuard prove by a preponderance of the evidence that Iva Joy made a material misrepresentation on the Proposal of Insurance?" **Verdict, RE 150, PageID# 1453.** The jury also found that AmGuard "act[ed] in bad faith in denying the Joys' insurance claim." **Verdict, RE 150, PageID# 1454.** The jury also answerd, "No," to the question of: "Did AmGuard prove by a preponderance of the evidence that it suffered a loss that arose from or resulted from any negligence, error, or omission of the Anthony Lancaster Insurance Agency, Inc.?" **Verdict, RE 150, PageID# 1455.** The jury awarded no recovery to AmGuard for any indemnification resulting from Anthony Lancaster Insurance Agency, Inc.'s breach of contract. **Verdict, RE 150, PageID# 1456.**

AmGuard filed a Rule 50 Motion for Judgment as a Matter of Law. **Motion for Judgment as a Matter of Law, RE 155, PageID# 1486, Memorandum in Support of Motion for Judgment as a Matter of Law, RE 156, PageID# 1489.** In that motion, AmGuard argued that it was entitled to judgment as a matter of law because Plaintiff's misrepresentation increased AmGuard's risk of loss as a matter of law. **Memorandum in Support of Motion for Judgment as a Matter of Law, RE 156, PageID# 1489-1499.** Plaintiffs' responded, opposing the motion. **Plaintiffs' Response to Rule 50 Motion, RE 157, PageID# 1567.** AmGuard filed a reply to Plaintiffs' Response. **Reply to Plaintiffs' Response to AmGuard's Rule 50 Motion, RE 162,**

**PageID 1587-1593.** The district court denied AmGuard's motion. **Order Denying Defendant's Motion for judgment as a Matter of Law, RE 163, PageID 1596.**

## SUMMARY OF THE ARGUMENT

This is a case where Plaintiffs sue AmGuard for breach of contract and statutory bad faith for denying Plaintiffs' claim under a policy of homeowners insurance after their residence burned in a fire. But as can be seen above, there is no evidence of bad faith or breach of contract.

Here, the trial court erred when it found, as a matter of law, that Plaintiffs' misrepresentation did not increase the risk of loss to AmGuard. The trial court's finding was error, as a matter of law. If the lower court had found otherwise, the policy would be void from its inception. In Tennessee, when an insured makes a material misrepresentation that increases the insurer's risk of loss, the insurance policy is void *from inception*, as a matter of law. The undisputed proof shows that AmGuard met every element used by Tennessee courts to show that Plaintiff Iva Joy's material misrepresentation (as decided by the jury) increased the risk of loss to AmGuard.

The court erred when it considered evidence concerning AmGuard's conduct *after the policy was void*, i.e., after Plaintiffs' misrepresentation. In this case, the district court took strong issue with the fact that, after Plaintiffs made the misrepresentation that increased the risk of loss, AmGuard did not follow an aspirational, internal, manual procedure where it would try to follow up with insureds to confirm the presence or absence of fire sprinklers. The internal procedure was not part of the Policy, and AmGuard never communicated the procedure to Plaintiffs, its other insureds, or any insurance agency. Plaintiffs did not rely on it, and did not know it existed until after the lawsuit was filed. Indeed, the only representation that AmGuard made to Plaintiffs was that it may, *but was not required to*, perform a follow up inspection on Plaintiffs' property.

The district court erred by focusing AmGuard's aspiration policy. This is because, when a material misrepresentation increases the risk of loss to an insurer, the policy is void *from its inception*. Thus, what AmGuard did or did not do after Iva Joy misrepresented the existence of sprinklers was of no import because the Policy was void at the inception. And there is no question that Plaintiffs' misrepresentation increased the risk of loss here: Plaintiffs misrepresented the existence of fire sprinklers and their home burned in a fire.

There was no evidence at trial that AmGuard breached the Policy, or committed statutory bad faith. Indeed, there was no proof offered showing that AmGuard breached a single terms of the Policy introduced into evidence.

The trial court erred when it introduced the Automatic Sprinkler Cert/Photo, the document evidencing AmGuard's aspirational procedure. It was irrelevant and highly prejudicial, as can be seen from the trial court's ruling denying AmGuard's Motion for Judgment as a Matter of Law. Trial Exhibit 4 did not alter or amend the terms of the Policy, which required automatic sprinklers for fire coverage, and had nothing to do with AmGuard's evaluation of Plaintiffs' claim.

In all, the aspirational procedure did nothing more but cause the lower court and the jury to conclude that AmGuard should have gone back and changed the policy to cure Plaintiffs' misrepresentation, which AmGuard had no legal or contractual duty to do. The overwhelming case law in Tennessee puts the onus on Plaintiffs to be accurate in representations on their insurance application, even assuming their insurance agent had actual knowledge that information in the application was false. When Iva Joy signed the Proposal of Insurance, she owned the statements in it.

Here, Plaintiff produced insufficient evidence to show that AmGuard breached the Policy or committed bad faith. Yet, despite irrefutable proof that the Lancaster Agency breached the Agency Agreement, AmGuard is the only one with a judgment against us. This outcome unjust, not in compliance with Tennessee law, and not supported by the evidence.

The Court should reverse the Trial Court's Order denying AmGuard's Rule 50 Motion, and dismiss Plaintiffs' case against AmGuard in its entirety, and otherwise vacate the verdict against it.

## ARGUMENT

**I.**     **The trial court erred by ruling that Plaintiff's misrepresentation on the insurance application did not increase the risk of loss**

The district court erred by concluding Plaintiffs'[1] material misrepresentation about the presence of automatic sprinklers in Plaintiffs' home did not increase the risk of loss to AmGuard. **Order, RE 163, PageID# 1596-1610.** Because Plaintiffs' misrepresentation increased the risk of loss to AmGuard, the Policy was void from its inception.

"[D]etermining whether a particular misrepresentation increases an insurance company's risk of loss is a question of law for the court." *Freeze v. Tenn. Farmers Mut. Ins. Co.*, 527 S.W.3d 227, 232 (Tenn. Ct. App. 2017). This Court reviews questions of law de novo. *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Financial Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997) (district court's conclusions of law reviewed de novo). This Court should reverse the trial court on the issue of whether Plaintiffs' misrepresentation increased the risk of loss to AmGuard. A review of Tennessee law is helpful to understanding this case. In Tennessee,

> No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or *unless the matter represented increases the risk of loss*.

TENN. CODE ANN. § 56-7-103 (emphasis added). Under TENN. CODE ANN. § 56-7-103, "to avoid coverage the insuror must first prove two things: that the answers in the application were false; then it must prove *either* that the false answers were given with intent to deceive the insuror *or*

---

[1] Iva Joy, not William Joy, misrepresented the fact in question when she signed the Proposal of Insurance. However, the collective term "Plaintiffs" is often used throughout for stylistic continuity and because both Plaintiffs' legal interests are inextricably intertwined.

that the false answers materially increased the risk of loss." *Womack v. Blue Cross & Blue Shield*, 593 S.W.2d 294, 295 (Tenn. 1980) (emphasis added).  Here, the jury concluded that Iva Joy made a material misrepresentation on the Proposal of Insurance when she stated in the application that Plaintiffs' home had automatic sprinklers. *See* **Verdict, RE 150, PageID# 1453.**

If Plaintiffs' misrepresentation was "material to the risk, it makes no difference that the misrepresentation was not made with actual intent to deceive." *Bauer v. Mutual of Omaha Ins. Co.*, 460 S.W.2d 366, 370 (Tenn. Ct. App. 1969).  In other words, if Plaintiffs' misrepresentation increased the risk of loss, the Policy is "void ab initio – that is, nullified from inception." *Jesmer v. Erie Ins. Co.*, 2021 U.S. App. LEXIS 29693, *7, WL 4473396 (6th Cir. Sept. 30, 2021)

The district court committed reversible error by ruling that Iva Joy's misrepresentation concerning sprinklers did not increase the risk of loss, as a matter of law. Indeed, the trial court applied a standard not recognized in Tennessee jurisprudence by focusing on AmGuard's conduct after the misrepresentation was made by Plaintiffs.  Error is further evident because, at trial, AmGuard fulfilled every Tennessee element courts use in determining whether an insurance company's risk of loss is increased.

The Policy was void *at the time of Plaintiffs' misrepresentation* – at the Policy's inception.  By its terms, the procedure in the Automatic Sprinkler Cert/Photo document was not triggered until after AmGuard issued the Policy and after Plaintiffs' misrepresentation. Thus, because the misrepresentation increased the risk of loss to AmGuard when it was made, the Policy was void ab initio – from the beginning. *See Jesmer,* 2021 U.S. App. LEXIS 29693 at *7. Given this, AmGuard no legal duty, contractual or otherwise, to follow up with Plaintiffs to confirm their representations or to retroactively correct Plaintiffs' misrepresentation in the application for insurance.  Not only is there no such contractual duty under the Policy, but there

is no tort or other legal basis to impose such a duty, either (e.g., negligent misrepresentation, detrimental reliance, etc.). The unchallenged proof at trial was that neither Plaintiffs nor the Lancaster Agency had any knowledge AmGuard might endeavor to confirm the veracity of Plaintiffs' representations in the signed Proposal of Insurance. Indeed, in the Proposal of Insurance, AmGuard instead told Plaintiffs that "WE MAY, BUT ARE NOT OBLIGATED, TO INSPECT YOUR PROPERTY." Proposal of Insurance, RE 56-3, PageID# 589 (all caps in original). That AmGuard may have decided, voluntarily, to confirm the veracity of Plaintiffs' statements, but did not do so, has no bearing to this case or application to Tenn. Code Ann. § 56-7-103.

As a matter of law, Iva Joy's misrepresentation increased AmGuard's risk of loss, without question. A "misrepresentation increases the risk of loss when it is of such importance that it naturally and reasonably influences the judgment of the insurer in making the contract." *Sine v. Tenn. Farmers Mut. Ins. Co.*, 861 S.W.2d 838, 839 (Tenn. Ct. App. 1993). Here, AmGuard's judgment was influenced in making the contract. Contrary to the lower court's analysis, if anything, AmGuard's aspirational procedure in the Automatic Sprinklers Cert/Photo document shows sprinklers are momentously important to AmGuard's risk, not evidence that sprinklers are unimportant or do not otherwise influence its judgment. The presence or absence of sprinklers is so important that AmGuard aspires, when it can, to follow up and confirm the presence or absence of sprinklers due to this importance. *See* **Automatic Sprinkler Cert/Photo**, RE 57-5, PageID# 617 – 618.

The insurance Policy does not contain the aspirational procedure at issue, and AmGuard does not communicate it to its insureds or agents. After all, if insureds believed there was no need for scrupulous accuracy in applying for insurance, the chaos of denied claims and resulting

litigation would ensue. But more importantly for purposes of this appeal, AmGuard had no legal duty to review Plaintiffs' signed application that contained the misrepresentation. Instead, as a matter of law, it was Iva Joy's legal duty to be accurate and the burden does not shift to AmGuard under any legal authority applicable here. *See Lawhon v. Mt. Life Ins. Co.*, No. E2011-00045-COA-R3-CV, 2011 Tenn. App. LEXIS 627, *11 2011 WL 5829726 (Tenn. Ct. App. Nov. 21, 2011) ("The law is well-settled in this [Tennessee] than an insured who signs but fails to read an application will be *conclusively* presumed to know its contents, and must suffer the consequences of his own negligence") (emphasis added).

Because Plaintiffs' misrepresentation does away with AmGuard's duty to Plaintiffs (the Policy was void from inception), there could be no bad faith on the part of AmGuard. Similarly, there could be no breach of contract. There is literally no evidence that AmGuard breached a single term of the Policy. The jury verdict should not stand, and this Court should reverse it.

While the loss of Plaintiffs' home is tragic, it does not do away for the need for dispassionate application of the law. *State Auto. Mut. Ins. Co. v. R.H.L., Inc.*, No. 07-1197, 2010 U.S. Dist. LEXIS 23390, *20, 2010 WL 909073 (W.D. Tenn. Mar. 12, 2010) ("where a policy's terms are unambiguous, it will be enforced as written, and a court cannot rewrite an unambiguous policy simply to avoid harsh results). The Policy unequivocally required Plaintiffs' home to have sprinklers for fire coverage to apply. Plaintiffs' home did not have protective sprinklers. AmGuard thought Plaintiffs' home did have fire sprinklers because of Plaintiffs' signed insurance application. There is no legal basis to require AmGuard to pay under the Policy, for an assessment of bad faith, or to find that AmGuard breached any term of the Policy. The proof unequivocally shows otherwise.

The lower court's focusing on AmGuard's conduct *after* Plaintiffs' misrepresentation constitutes error, as was the trial court's decision to let the jury's bad faith and breach of contract findings stand. AmGuard could not breach the Policy or commit bad faith because the Policy was void from inception and it had no obligation to pay benefits under the Policy.

Putting aside the aspirational procedure in Trial Exhibit 4, the Automatic Sprinkler Cert/Photo document, AmGuard runs the proverbial table regarding all of the factors Tennessee courts consider when determining if a misrepresentation increases the risk of loss. Indeed, if the trial court's decision is affirmed, it will send Tennessee law into a state of confusion, since lawyers frequently cite federal appellate decisions interpreting state law to support their arguments.

Recall that "*any* misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that 'increases the risk of loss' within the meaning of the statute." *Little v. Washington Nat'l Ins. Co.*, 241 S.W.2d 838, 840 (Tenn. Ct. App. 1951) (emphasis added). How did the misrepresentation influence AmGuard? Iva Joy's misrepresentation caused AmGuard to charge a lower annual premium, which courts consider when deciding whether there is an increased risk of loss to an insurer. *See Estate of Howard v. First Cmty. Bank*, No. E2007-02391-COA-R3-CV, 2009 Tenn. App. LEXIS 93, *28, 2009 WL 499541 (Tenn. Ct. App. Feb. 27, 2009) (considering how a misrepresentation "would have affected the amount of the premium"). Yet the trial court, without legal basis or explanation, gave the important factor of the reduced premium short shrift, arbitrarily diminishing its importance. *See* **Order Denying Motion for Judgment as a Matter of Law, RE 163, PageID# 1605** (the misrepresentation that there were sprinklers in Plaintiffs' home was "*merely* the basis for a discounted premium …") (emphasis added).

The district court apparently would require AmGuard to wholly refuse to insure Plaintiffs' residence before concluding there was an increased risk of loss to AmGuard. *See* **Order Denying Motion for Judgment as a Matter of Law, RE 163, PageID# 1605** (recognizing AmGuard would still "*have issued the policy* on Joy's property regardless of the use of sprinklers") (emphasis added). But the trial court's analysis is, again, out of step with Tennessee law and constitutes error. *Sine* requires only that the misrepresentation influence the judgment of the insurer, not cause the insurer to refuse to issue a policy altogether. It is "not necessary to find that the policy would not have been issued if the truth had been disclosed." *Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d 232, 235 (Tenn. Ct. App. 2000). "It is sufficient that the insurer was denied information which it sought in good faith and which was deemed necessary to an honest appraisal of insurability." *Id.* Moreover, the trial court is in clear error on the facts. V.P. Aigeldinger unequivocally testified that AmGuard would *not* have issued a policy like the one here; it would have been a *different policy* with *different terms* and a *different, higher premium*. *See* **Transcript R. 167, PageID# 1872**

The Proposal of Insurance – the application – is itself further evidence that Iva Joy's misrepresentation increased the risk of loss as a matter of law. Courts "use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss." *Freeze v. Tenn. Farmers Mut. Ins. Co.*, 527 S.W.3d 227, 232 (Tenn. Ct. App. 2017). Even the lower court recognized, "Generally speaking, truthful answers to the questions on an insurance application have bearing on the insurer's risk of loss, particularly when the policy covers risks of property damage and the question concerns the use of protective or safety devices to prevent damage to the property." **Order Denying Motion for Judgment as a Matter of Law,**

**DE 163**, **PageID 1604-05**.  This dispute is caused, not by AmGuard failing to proofread Plaintiffs' insurance application, which it was under no requirement to do.  Rather, it is Plaintiffs' misrepresentation in the signed Proposal of Insurance.

V.P. Aigeldinger's testimony is critically important and cements AmGuard's position. The trial committed error when it discounted her testimony in denying AmGuard's Rule 50 Motion.  Courts "frequently rely on the testimony of insurance company representatives to establish how truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy." *Estate of Howard v. First Cmty. Bank*, 2009 Tenn. App. LEXIS 93, *28, 2009 WL 499541 (Tenn. Ct. App. Feb. 27, 2009).  Here, Vice President Aigeldinger testified about how the risk was greater without sprinklers than it was with sprinklers; that a different, higher premium would have been charged if Plaintiffs had no sprinklers; and, that AmGuard could have still insured the property, but under a wholly different insurance policy with different contractual terms.

The district court erroneously discounted this testimony as not "add[ing] much," noting she did not present "actuarial evidence." **Order, DE 163, PageID# 1604.**  The legal error of the court's conclusion can be best evidenced best by comparison: this Court has considered and relied the very type of evidence offered by V.P. Aigeldinger to conclude a misrepresentation increased an insurance company's risk of loss. *See Bagwell v. Canal Ins. Co.*, 663 F.2d 710, 712 (6th Cir. 1981) (considering a vice president's testimony about questions asked on the application, charging higher premiums, and under what circumstances the insurer would have written a policy).

It is hard to "add much" to the situation here because it is such a common-sense issue. Actuarial evidence is not needed. After all, Plaintiffs represented that their home had protective

fire sprinklers when it did not. There is no logical leap needed to understand how that increases an insurer's risk. And in Tennessee, an appeal to common sense is enough under § 56-7-103 to show an increase in an insurer's risk. *See Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d 232, 237 (Tenn. Ct. App. 2000) ("the existence of [insured]'s business pursuits on the premises is a factor that would 'naturally and reasonably influence' an insurer's judgment is also a matter of commons sense"); *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 591 (Tenn. Ct. App. 2006) ("persons with DUI convictions have a higher risk of death" is "a matter of common sense"). Plaintiffs' home did not have sprinklers and a fire destroyed it. Actuarial evidence is not needed to show an increase in the risk – it is facially evident.

In noting the amount of premium, the trial court also appeared improperly evaluate the amount of the increased risk, which is against the plain language of § 56-7-103. Under § 56-7-103, it is the misrepresentation that must be material, not the increase in risk. *See* Tenn. Code Ann. § 56-7-103 (stating that no "misrepresentation … shall be deemed material … unless the matter represented increases the risk of loss"). "Tenn. Code Ann. § 56-7-103 does not require a 'material' increase in the risk of loss before an insurance claim can be rejected." *Estate of Howard v. First Cmty. Bank*, No. E2007-02391-COA-R3-CV, 2009 Tenn. App. LEXIS 93, *29, 2009 WL 499541 (Tenn. Ct. App. Feb. 27, 2009). "It is the misrepresentation that must be material, and the statute clearly states that a misrepresentation will not be deemed material unless it increases the risk of loss to the insurer." *Id*. "Therefore, the correct inquiry in cases involving Tenn. Code Ann. § 56-7-103 is simply whether the misrepresentation increased the insurance company's risk of loss." *Id*.[2] To conclude the increase in the risk of loss is immaterial

---

[2] Section 56-7-103 controls this analysis, but there are cases stating the increase risk of loss must be "material," as opposed to only the misrepresentation being "material." Courts stating that the risk of loss must be material appear to do so only in dicta. *See, e.g., Broyles v. Ford Life Ins. Co.*,

is error because it is contrary to § 56-7-103. If there is any increase in the risk of loss to AmGuard, it is enough under the statute to void a policy.

The holding in *Vermont Mut. Ins. Co. v. Chiu*, 21 S.W.3d 232, 237 (Tenn. Ct. App. 2000) helps crystalize these concepts. There, insureds lost their home in a fire and, after a trial, a jury found that the one of the insureds had made material misrepresentations in the signed application for a homeowners insurance policy. *Id*. at 233-34. The trial court, however, ruled that there was insufficient evidence that the insured' misrepresentations increased the insurer's risk of loss under § 56-7-103. *Id*. at 233-34. The *Chiu* insureds' misrepresentation was that the insureds no longer had boarders living in her home when, in fact, they had two boarders who paid rent. *Id*. at 234. The *Chiu* insureds' home was destroyed in a fire, killing one of the boarders. *Id*. The insurance company sought to void the policy under § 56-7-103. *Id*. Like this case, the jury answered "yes" to the question of whether the insureds made "material and false representations to [the insurance company]" but "no" to the question as to whether the misrepresentation was made "with an intent to deceive." *Id*.

The Court of Appeals held that the trial court erred when it ruled that the insureds' misrepresentations did not increase the risk of loss to the insurance company. *Id*. at 235. In addition to relying on the testimony of an underwriting manager, the *Chiu* court found that the insureds' business pursuits would "naturally and reasonably influence" an "insurer's judgment" as "a matter of common sense." *Id*. at 237. For instance, the Court of Appeals observed a homeowner exercises a lesser degree of control over the activities of a stranger who is paying rent than over a family member; and, by paying money to live in the house a boarder receives a

---

594 S.W.2d 691, 693 (Tenn. 1980); *see also Kentucky Cent. Life Ins. Co. v. Jones*, 799 F.Supp. 53, 55 (M.D. Tenn. 1992).

greater degree of privacy, meaning that the homeowner has little or no ability to control the boarder's rented area which, in turn, means there is certain conduct a homeowner could not prevent. *Id*. at 237. Therefore, the *Chiu* court held, the insureds' "misrepresentations concerning the operation of a business on [the] premises had the effect of increasing [the insurer]'s risk of loss, in accordance with T.C.A. § 56-7-103. *Id*. at 237. Therefore, the "trial court erred in determining that the plaintiffs were entitled to recover under the policy." *Id*. If *Chiu* is common sense, then so is AmGuard's position here. If boarders increase the risk of loss in a fire loss case, then surely lack of fire sprinklers do, as well.

Notably, the *Chiu* court is not the only Tennessee court to apply a common sense approach regarding risk. In *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 591 (Tenn. Ct. App. 2006), the court held there was a misrepresentation sufficient to void an insurance policy because "it is a matter of common sense … that persons with [D.U.I.] convictions have a higher risk of death, especially deaths caused by automobile accidents." This reasoning applies here: common sense dictates that fires are less likely with sprinklers. And, if a fire occurs, it is more likely that there will be less property damage in a home with sprinklers than in a home without sprinklers. Lack of sprinklers increases the risk of fire damage, plain and simple.

Here, Iva Joy's misrepresentation relates to the exact risk – fire – that caused Plaintiffs' home to be destroyed. Comparing the Joys' case with *Chiu*, the *Chiu* court never suggested the fire was caused by the presence or absence of the boarders. This is because "the thing misrepresented need not necessarily be one that increases the hazard in the sense that it actually occasions or contributes to the loss." *Independent Life Ins. Co. v. Russell*, 80 S.W.2d 846, 848 (Tenn. Ct. App. 1934). However, in this case, the increased risk at issue – fire loss – is the exact

loss that caused the loss to the Joys' home.  This makes underscores the materiality of Plaintiffs' misrepresentation and the increased risk caused by Iva Joy's misrepresentation.  It also bolsters the need for application of the common sense approach applied in other cases. Plaintiffs' home was lost in a fire, and sprinklers obviously would have decreased the risk of fire to Plaintiffs and AmGuard, if the sprinklers had only existed.

The Tennessee Court of Appeals has repeatedly held in fire loss cases that an insured's misrepresentation increases the risk of loss under TENN. CODE ANN. § 56-7-103.  As can be seen, the misrepresentations do not, on their face, appear to relate to the risk of fire. *See, e.g.*, *Lloyd v. Farmers Mut. Fire Ins. Co.*, 838 S.W.2d 542 (Tenn. Ct. App. 1992) (misrepresentation that insured had no insurance losses in previous seven years increased risk of loss); *State Farm Gen. Ins. Co. v. Wood*, 1 S.W.3d 658 (Tenn. Ct. App.. 1999) (misrepresentation about prior fire losses increased the risk of loss); *Conley v. Tenn. Farmers Ins. Co.*, No. W2017-00803-COA-R3-CV, 2018 Tenn. App. LEXIS 428, *1, 4 2018 WL 3561725 (Tenn. Ct. App. July 24, 2018) (misrepresentation about prior foreclosure), *Dutton v. Tenn. Farmers Mut. Ins. Co.*, 577 S.W.3d 222 (Tenn. Ct. App. 2018) (misrepresentations about drug convictions).  These are all fire cases that involved representations not related to the risk of fire.  Holding that Plaintiff's representations in this case somehow *did not* increase AmGuard's risk of loss would throw Tennessee law into a state of disarray.

### II.    The trial court erred by admitting AmGuard's internal, aspirational policy because it was not relevant for any reason, drastically prejudiced AmGuard, and polluted the jury's findings and the trial court's ruling

The trial court erred by admitting into evidence AmGuard's aspirational, internal procedure by which it endeavored to confirm representations of fact by its insureds. *See* **Automatic Sprinkler Cert/Photo, RE 57-5, PageID# 618**.  Indeed, the trial court relied on

Trial Exhibit 4 heavily in its Order denying AmGuard's Rule 50 Motion. *See generally* **Order Denying Judgment as a Matter of Law, RE 163, PageID# 1596-1610.** AmGuard's counsel objected to introduction of Trial Exhibit 4 and requested a limiting instruction that the internal process was a parole document and not relevant to the terms of the Policy that AmGuard issued. **Transcript, R. 167, PageID# 1885, 1892-94.** This evidence polluted the entire trial, jury's findings, as well as the final order of the district court. The document is not relevant to any issue in this case, and the trial court committed reversible evidence by admitting it and relying on it in denying AmGuard's Rule 50 Motion.

"This court reviews a district court's evidentiary rulings for abuse of discretion, and a district court's determination will be reversed only if the abuse of discretion caused more than harmless error." *Tompkin v. Phillip Morris USA, Inc.*, 362 F. 3d 882, 897 (6th 2004) (internal citations omitted). Here, the harm was far more than harmless. Even the trial court suggested that the evidence could be evidence of "unconscionable behavior." **Transcript, R. 167, p. 1900.** The district court's suggestion of unconscionability – despite no party raising the issue – shows the prejudicial possibilities a jury could consider. The prejudice is further evidenced in the trial court's order denying AmGuard's Rule 50 Motion. There is virtually no question that if Trial Exhibit 4, the Automatic Sprinkler Cert/Photo documents, had been excluded from evidence, there would have been no straight-faced argument whatsoever that Plaintiffs' misrepresentation did not increase the risk of loss. The trial court erred in relying on the evidence in its Order Denying AmGuard's Motion for Judgment as a Matter of Law.

AmGuard's internal procedure is not relevant; it has no tendency to make any fact of consequence in this action more or less probable than it would be without the evidence. *See* FED. R. EVID. P. 401. Therefore, it is inadmissible. FED. R. EVID. 402. The jury should have never

seen it.  This is one of those few cases where Fed. R. Evid. 403's standard is met, because of the manifest prejudice to AmGuard. Even the trial court, sua sponte, suggested it may be evidence of "unconscionable" conduct. *See* Fed. R. Evid. 403.

The evidence is not a contractual document, and it does not affect AmGuard's legal obligations to Plaintiffs in any way.  Insurance policies are contracts. *Merrimack Mut. Fire. Ins. Co.*, 59 SW 3d 142, 147 (Tenn. Ct. App. 2001). In Tennessee, "courts have a duty to enforce insurance policies as they are written." *Spears v. Commercial Ins Co.*, 866 S.W.2d 544, 548 (Tenn. App. 1993). "If there is no ambiguity in the insurance policy, it is the court's duty to take the ordinary meaning of the words used and favor neither party." *Omaha Property & Cas. Ins. Co. v. Johnson*, 866 S.W.2d 539, 541 (Tenn. App. 1993). Since it does not constitute any contractual term of the Policy, AmGuard's decision or failure to not implement the aspirational policy has not bearing on any breach of contract claim by Plaintiffs.

The evidence is inadmissible parol evidence.  It was not incorporated into the Policy. A party cannot "use extrinsic evidence to alter, vary, or qualify the plain meaning of an unambiguous written contract." *GRW Enters. v. Davis*, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990). The parol evidence rule provides that "a writing intended by the parties to be a final embodiment of their agreement," like the Policy here, "cannot be modified by evidence or earlier or contemporaneous agreements that might add to, vary, or contradict the writing." *Individual Healthcare Specialists, Inc., v. Blue Cross Blue Shield of Tenn., Inc.*, 566 S.W.3d 671, 694-95 (Tenn. 2019) (citing Black's Law Dictionary 1292 (Tenth Ed. 2014)). "The general rule is that parole evidence is not admissible to contradict a written agreement." *Id.* at 695. The parole evidence rule, in Tennessee, is, "more accurately characterized as a rule of substantive law." *Id.* at 696. "The question is not really whether evidence can be admitted which might vary the

written document, but whether if the evidence is admitted, it will have the legal effect of varying the document." *Id*. at 696 (citations omitted).

Here, Trial Exhibit 4 was used to impose a legal obligation on AmGuard not stated in the Policy. This is evidenced by the trial court's analysis that AmGuard should have changed Plaintiffs' misrepresentation of fact, when there was no legal requirement for AmGuard to do so. "Contractual duties are created either by the terms of the contract or by the legal implications therefrom flowing." *United American Bank v. Gardner*, 706 S.W.2d 639, 641 (Tenn. Ct. App. 1985). There is no basis for the Court to imply or apply a duty to AmGuard that nullified Plaintiffs' misrepresentation.

Tennessee Courts have applied the parol evidence rule to insurance policies, and the trial court erred by failing to do so here. *See, e.g., People's Bank v. Troutman*, E2014-01150-COA-R3-CV-2015 Tenn. App. LEXIS 600, *19-20 2015 WL 4511540 (Tenn. Ct. App. July 27, 2015) (holding a policy of insurance was unambiguous and therefore, parole evidence was not permitted). The trial court should not have admitted the evidence.

Admittedly, at least one court has admitted an insurance company's internal policies as evidence in a bad faith action. *See, e.g., United States Roller Works, Inc. v. State Auto Prop. & Cas. Ins. Co.*, Case No. 3:16-cv-2827, 2018 U.S. Dist. LEXIS 146404, *1, 2018 WL 4095058 (M.D. Tenn. Aug. 28, 2018) (ruling insurer's claims handling policies were relevant to a bad faith claim). However, *Roller Works* analyzed the admissibility of an insurer's "claim handling manual" for an analysis of how the insurer handled plaintiff's insurance claim. *Id*. at *1. The *Roller Works* court analyzed the claim handling manual, noting that "Key to the question of bad faith is whether an insurer's delay or refusal to pay can be attributed to something "other than a genuine dispute as to the value" of the claim. *Id*. at *3. Indeed, that is the essence of a bad faith

claim in Tennessee: how and why did the insurance company deny the claim *once the claim was made*. *See Ginn v. Am. Heritage Life Ins. Co.*, 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004) (To recover for bad faith under Tenn. Code Ann. § 56-7-105, plaintiffs must prove "(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith").

AmGuard's aspirational policy was stale at the time of Plaintiffs' fire, and had no part AmGuard's evaluation of Plaintiffs' claim for benefits. Iva Joy's testimony is clear: AmGuard quickly investigated the claim, was responsive, and issued a letter fairly communicating the reasons AmGuard denied the claim. The reasons were based on a black and white reading of the Policy's terms – that is, for fire coverage under the Policy, automatic sprinklers were required and Plaintiffs' home had no such sprinklers.

Indeed, the jury's finding, and the trial court's order denying AmGuard's Rule 50 Motion, essentially states that AmGuard committed breach of contract and bad faith because it did not go back and retroactively amend Plaintiffs' insurance policy for coverage Plaintiffs did not ask for and did not get. But the law is that "courts will not rewrite an unambiguous term simply to avoid harsh results. *Certain Underwriter's at Lloyd's of London v. Transcarriers Inc.*, 107 S.W.3d 496, 499 (Tenn. Ct. App. 2002) (involving an insurance policy).

It has also been said that there is no bad faith when "there is a genuine dispute as to value, no conscious indifference *to the claim*, and no proof that the insurer acted from any improper motive." *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986)(other citations and quotation marks omitted"). Here, AmGuard simply applied the

terms of the Policy, and held Plaintiffs to their (mis)representations in the signed Proposal of Insurance and the language of the Policy.

### III.    The trial court's findings regarding breach of contract, agency, and negligence constitute error.

The trial court recognized that the jury "found that AmGuard had breached the policy, either because it waived the policy condition on sprinklers or because as a matter of equity AmGuard should not be permitted to escape liability due to the mistake or negligence of its agent." **Order, RE 163, PageID# 1609**.[3]  Plaintiffs did not make a negligence claim against AmGuard.  And there was no expert who testified any professional was negligent.  There is no evidence of waiver.

At the close of Plaintiffs' proof, AmGuard moved to dismiss Plaintiffs' claims for breach of contract, and otherwise all claims under the Policy; the motion was not granted.  Here, there was no admissible evidence that AmGuard breached the Policy or committed bad faith, and the trial court should have granted AmGuard's motion at the close of Plaintiffs' proof. For diversity cases like this, when the this Court reviews Rule 50(a) motions, [it applies] the state-law standard. *Mannix v. County of Monroe*, 348 F.3d 526, 531-32 (6th Cir. 2003).  To wit:

> A motion for a directed verdict provides a vehicle for deciding questions of law; the question presented is whether the plaintiff has presented sufficient evidence to create an issue of fact for the jury to decide. Appellate courts must conduct a *de novo* review of a trial court's ruling on a motion for a directed verdict, applying the same standards that govern the trial court's determination. The plaintiff's verdict cannot be based upon speculation, conjecture, guesswork, or a mere spark or glimmer of evidence. A directed verdict is appropriate only when evidence, viewed reasonably, supports only one conclusion. If "reasonable minds could . . . differ as to the conclusions to be drawn from the evidence," the motion must be denied. Motions for a directed verdict require more certainty and proof than do

---

[3] Notably, no party sued under the negligence theory.  Thus, this analysis constitutes error, as there is no basis or impute negligence on AmGuard here.  There was no expert testimony that any insurance professional committed any negligence.

motions for an involuntary dismissal. In reviewing a motion for a directed verdict, courts must take the strongest legitimate view of the evidence against the directed verdict and must deny the motion in any case where all reasonable persons would not reach the same conclusion. Only if there is no material evidence in the record that would support a verdict for the plaintiff under any of the plaintiff's theories may the trial court's action in directing a verdict be sustained. To avoid a directed verdict under Tenn. R. Civ. P. 50, the non-moving party must present some evidence on every element of its case—enough evidence to establish at least a prima facie case.

*Twenty Holdings, LLC v. Land South TN, LLC*, No. M2018-01903-COA-R3-CV, 2019 Tenn. App. LEXIS 438, *19-20, 2019 WL 4200970 (Tenn. Ct. App. Sept. 5, 2019) (internal citations omitted).

There was no competent evidence of waiver, estoppel, or any proof that AmGuard was negligent; that AmGuard breached the Policy or acted in bad faith. It did not matter what the Lancaster Agency did or what it knew because Iva Joy signed and adopted the Policy of Insurance. "[U]nder Tennessee law, [the insured], and not the agent, [is] ultimately responsible for ensuring that [the] insurance application contained truthful information." *Jesmer v. Erie Ins. Co.*, 2021 U.S. App. LEXIS 29693, WL 4473396 (6th Cir. Sept. 30, 2021). The outcome in this case, and the legal theories on which it purports to be based, flips the holding of *Jesmer*, and the other cases like it, on its head. No conduct or knowledge of the Lancaster Agency excused, or could excuse, Plaintiffs from their duty of accuracy in their insurance application, the Proposal of Insurance.

The trial court may believe that because the Lancaster Agency had actual knowledge that Plaintiffs' residence did not have fire sprinklers, TENN. CODE ANN. § 56-7-103 does not apply because that knowledge was imputed to AmGuard. Additionally, the trial court may have accepted that, because the Lancaster Agency filled out the Proposal of Insurance that Plaintiff signed, AmGuard should be liable to Plaintiffs. Either constitutes error here.

The Tennessee Supreme Court and lower courts have repeatedly held an insurer can properly deny coverage, *even when an insured makes a written misrepresentation in an application and the agent has actual knowledge of its falsity*.  Thus, it makes no difference what the Lancaster Agency knew or what it did – Plaintiffs are responsible for the representations in the signed insurance application, not AmGuard.

In *De Ford v. Nat'l Life & Acc. Ins. Co.*, 185 S.W.2d 617, 619 (Tenn. 1945), the supreme court reversed a verdict in favor of a plaintiff who sued an insurer because it denied benefits, even though the insurance agent had actual knowledge of misrepresentations in the application signed by the insured.  Later, the court stated that *De Ford* should be "confined to its own facts," but was "sound in principle." *Ind. Life & Health Ins. Co. v.* , 437, 206 S.W.2d 414, 415 (1947).

Those principles are: that knowledge of the agent is not imputed to his principal when 1) a third party, such as an applicant for insurance, is acquainted with circumstances indicating that an agent will not advise his principal of disclosed facts; 2) where the third party colludes with the agent in acting adversely to the principal; 3) where the third party uses the agent to further his own fraud upon the principal; 4) where the agent's disclosure is such that the agent is certain to conceal the information from his principal; or 5) where the agent's interests would be defeated by the disclosure. *Id*. at 620.

In *Beasley v. Metropolitan Life Insurance Co.*, 229 S.W.2d 146, 148 (Tenn. 1950), the supreme court again held that, because an insured signed the application containing misrepresentations, the insurance agent's actual knowledge of the true facts was *not* imputed to the insurance company.  The *Beasley* facts are very analogous to those in this case:

> The answers to the application [were] admittedly false, but according to the Plaintiff's testimony, neither she nor her husband knew that those answers were false.... Plaintiff says her husband signed the false application but did not read it, though there was no fraud, duress, or disability to prevent his reading it, and the

> Plaintiff says she herself received the policy when it was delivered, but she did not read it and knew nothing about its falsity until the Company refused to pay the claim.

*Id*. at 146, 147 (Tenn. 1950).  The court explained to permit "a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit he signed it but did not read it or note its stipulations would absolutely destroy the value of all contracts." *Id*. at 148. "It will not do for a man to enter into a contract, and when called upon to respond to its allegations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law." *Id*. at 148.

Other courts in Tennessee have recognized "[t]he law is well-settled in this State than an insured who signs but fails to read an application will be conclusively presumed to know its contents, and must suffer the consequences of his own negligence." *Lawhon v. Mt. Life Ins. Co.*, No. E2011-00045-COA-R3-CV, 2011 Tenn. App. LEXIS 627, *11 2011 WL 5829726 (Tenn. Ct. App. Nov. 21, 2011).  This well-settled rule clearly applies even when the insurance agent has knowledge of the true facts.  In *Hardin v. Combined Ins. Co.*, 528 S.W.2d 31 (Tenn. Ct. App. 1975), the insured signed an application containing misrepresentations by the insured about health. *Id*. at 32.  The *Hardin* plaintiff argued that the insurance agent had actual knowledge of the true facts. *Id*. 34.  The *Hardin* court held that was of no import and the insurance company was justified denying benefits because, even "if we accept the theory of the Plaintiff we are still required to deny recovery under the holdings of the Supreme Court in the case[s] [of *De Ford* and *Beasley*]". *Id*.

In *Montgomery v. Reserve Life Ins. Co.*, 585 S.W.2d 620, 622 (Tenn. Ct. App. 1979), the court applied § 56-7-103[4] and held that the insurance company was justified in denying coverage based on misrepresentations in the signed insurance application. *Montgomery* involved misrepresentations in a signed insurance application about plaintiff's wife's health, which the insured did not read before signing. *Id.* at 621-622.  Plaintiff argued coverage applied because he told the agent of the true facts: "he advised the agent that his wife was under the care of a psychiatrist" on the date the application was signed. *Id.* at 621.  The Court cited *De Ford* and *Beasley*, holding an "insured has the duty to read the application for insurance and to verify the accuracy of the information therein stated." *Id.* at 622.  Even "where the agent deliberately omits from the application the insured's correct medical history and that omission increases the risk of loss, there can be no recovery on the policy where the insured, failing to read the application, affirms the accuracy of the statements therein contained." *Id.* (*citing Hardin v. Combined Ins. Co. of Am.* 528 S.W.2d 31 (Tenn. Ct. App. 1975).

*Giles v. Allstate Insurance Company*, 871 S.W.2d 154 (Tenn. Ct. App. 1993) relied on *Beasley* to reject an argument like the Plaintiffs' in a case involving the application of § 56-7-103. In *Giles*, prior to applying for insurance, plaintiff had a previous fire was not "revealed in the [signed] application," which she did not read before signing. *Id.* at 155. The trial court ruled the insurance agent had actual knowledge of the previous fire, contrary to representations in the insured-signed application. *Id.*  Plaintiff argued that because she "correctly answered questions about her previous fire losses [and] the agent listed incorrect answers on the application, she should not be denied coverage even though she signed the application without reading it." *Id.* at

---

[4] The case cites to § 56-1103, which is the same verbatim statute using the previous legal citation for § 56-7-103.

156.  The *Giles* court rejected plaintiff's argument and held the case falls "within … *Beasley* …" and the insurance company was justified in denying coverage, even if the agent had actual knowledge of the previous fire. *Id*. at 156.

In *Elliot v. Life of the South Ins. Co*., 296 S.W.3d 64 (Tenn. Ct. App. 2008), the court held, when deciding issues under TENN. CODE ANN. § 56-7-103, that the insurance company properly denied coverage because "Tennessee case law holds that an insurance policy is void ab initio if the applicant executed the application for the policy and such application contained a material misrepresentation *and this law applies even where the agent of the insurer intentionally prepared the policy to contain false information in place of accurate information provided to him by the applicant.*" *Id*. at 71 (emphasis added) (citations and quotations omitted); *see also Lawhon,* 2011 Tenn. App. LEXIS 627 at \*11 ("It matters not whether the agent filled out the application wrong or even whether the agent intentionally put down answers which he knew to be false, the applicant who signed the application affirms the answers contained in the application").

In some of the cases cited above, the application contained language indicating the signatory read or affirmed the statements in the application. *See, e.g.*, *Hardin*, *Montgomery*. However, given the jury's verdict, that is a distinction without a difference. The jury found the misrepresentation to be Iva Joys' misrepresentation.  Clearly, Plaintiffs failed to rebut the presumption contained in TENN. CODE ANN. § 56-7-135(a), that "create[s] a rebuttable presumption" that the insured "has read, understands, and accepts the contents of such document." TENN. CODE ANN. § 56-7-135(a).

The trial court should have granted AmGuard's motion to dismiss, and should have granted AmGuard's Rule 50 Motion. This Court should reverse the trial courts rulings on these counts.

**IV.     The verdict is logically inconsistent, given the trial court's refusal to grant AmGuard's Rule 50 Motion.**

The outcome of this trial is facially unjust under the law. The evidence does not support the jury's finding that the Lancaster Agency did not breach the Agency Agreement, since it clearly did not investigate the facts regarding the insurability of Plaintiffs' residence. If it did, it would have noticed there were no sprinklers.

AmGuard received a signed document from Iva Joy and Lancaster Agency stating that Plaintiffs' resident had protective automatic sprinklers. AmGuard issued the Policy, clearly stating in the Policy that automatic fire sprinklers are required for the Policy to be effective. AmGuard had no role in preparing the Proposal of Insurance. Instead, licensed insurance agent Shunnica Ayers did. Despite the fact that Shunnica Ayers was a licensed insurance agent, she interpreted the protective device known as "automatic sprinklers" as meaning a hose attached to a timer in Plaintiffs' yard. This is something even the unlicensed Iva Joy disagreed with. And because Shunnica Ayers had reasons to socially visit Plaintiffs' residence, she knew, in fact, that Plaintiffs did not have protective automatic sprinklers in their house. But AmGuard had no such knowledge.

Shunnica Ayers, on behalf of Lancaster Agency, clearly did not investigate fully the facts relating the insurability of Plaintiffs' residence prior to assisting Iva Joy in completing the insurance application, as required by the Agency Agreement. This is in direct contravention of the plain language of the Agency Agreement. "The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance

amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc*., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). The jury's verdict is wholly inconsistent to hold AmGuard liable for breach of contract and statuory bad faith when it had not involvement in filling out the Proposal of Insurance, selecting coverage for Plaintiffs, or investigating the insurability of the loss. The Lancaster Agency was responsible for ensuring Plaintiffs' home was insurable under the Policy, and there was a breach. This Court should not let this situation stand.

Here, Iva Joy signed and adopted the Proposal of Insurance, misrepresenting the condition of Plaintiffs' home when she confirmed there were sprinklers. Here, Lancaster Agency employee and licensed insurance agent, Shunnica Ayers, believed that "automatic sprinklers," listed under "protective devices" in an application for insurance, meant a hose on a timer in a yard, when even the unlicensed Iva Joy agreed that a lawn sprinkler was not a protective device. It is inconsistent with the facts and the Agency Agreement for AmGuard to be left holding the proverbial bag here. If AmGuard is liable for breach of contract, the Lancaster Agency should be liable under the Agency Agreement, which requires the Lancaster Agency to indemnify AmGuard for any loss.

## **CONCLUSION**

This Court should reverse the trial court's Order Denying AmGuard's Rule 50 Motion for Judgment as a Matter of Law and hold that, as a matter of law, Plaintiffs' misrepresentation about the existence of protective sprinklers increased the risk of loss to AmGuard. This Court should also hold that the trial court erred by admitting into evidence Trial Exhibit 4, the Automatic Sprinkler Cert/Photo document, and that admission of that evidence constitutes reversible error and the evidence should not have been consider by the trial court or the jury.

This Court should hold that the Policy was void from its inception and, because AmGuard owed no duty under the Policy, it did not breach the Policy or commit statutory bad faith. Since the Policy was void from its inception, the trial court should vacate the jury's finding that AmGuard acted in bad faith, and otherwise hold that AmGuard did not breach the Policy in any way.

Alternatively, this Court should reverse the trial court's denial of AmGuard's motion for directed verdict at the close of Plaintiffs' proof. There is no evidence, much less sufficient evidence, that AmGuard breached any contractual term of the Policy or committed bad faith, or otherwise acted in contravention to any contractual or legal duty.

Finally, this Court should grant AmGuard any and all relief under the circumstances to avoid an inconsistent verdict, including granting a new trial to avoid an inconsistent verdict. Indeed, according to the jury's verdict, AmGuard is the only party liable despite the fact that the Lancaster Agency filled out the Proposal of Insurance and Iva Joy signed it, even though both the Lancaster Agency and Iva Joy knew that Plaintiffs' home did not have fire sprinklers. AmGuard should not be liable to Plaintiffs under these facts.

Respectfully submitted,

MCANGUS GOUDELOCK & COURIE, LLC


**/s/ Brian F. Walthart**
BRIAN F. WALTHART, 024777
MCANGUS GOUDELOCK & COURIE, LLC
Post Office Box 2949
120 Brentwood Commons Way, Suite 625
(37027)
Brentwood, Tennessee 37024
Phone: (615) 499-7292
Email: brian.walthart@mgclaw.com

ATTORNEY FOR AMGUARD INSURANCE
COMPANY, APPELLANT

## **CERTIFICATE OF COMPLIANCE**

Undersigned counsel certifies that the relevant portions of this brief contain approximately 12,683 words and, therefore, complies with the page- and word- count limitations set forth in Fed. R. App. P. 32(g).

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Drayton D. Berkley
Berkley Law Firm, PLLC
P. O. Box 771048
Memphis, Tennessee  38177
*Attorney for Appellees*

Michael Holder
Lewis, Thomason, King, Krieg & Waldrop, P.C.
Post Office Box 198615
Nashville, Tennessee 37219-8615
*Attorneys for Appellees*

Janet Strevel Hayes
Lewis Thomason, P.C.
620 Market Sq., One Centre Square, 5th Floor
Knoxville, Tennessee 37902
*Attorney for Anthony Lancaster and Anthony Lancaster Insurance Agency, Inc.*

Robert Reid
Lewis Thomason, P.C.
40 S. Main Street, Ste. 2900
Memphis, Tennessee 38103
*Attorney for Anthony Lancaster and Anthony Lancaster Insurance Agency, Inc.*

This the 21st day of February, 2023.

**/s/ Brian F. Walthart**
BRIAN F. WALTHART

## <u>ADDENDUM</u>

**Designation of originating court documents**

1. **Complaint**, RE 1, PageID# 17 – 24

2. **First Amended Complaint**, RE 34, PageID# 378 – 386

3. **AmGuard Insurance Company's Answer to First Amended Complaint**, RE 36, PageID# 392-403

4. **Third Party Complaint of AmGuard Insurance Company**, RE 39, PageID# 413 – 417

5. **Answer of Third-Party Defendants to Third-Party Complaint**, RE 47, PageID# 447 – 451

6. **Verdict**, RE 150, PageID# 1453 – 1456

7. **Judgment**, RE 153, PageID# 1484

8. **Order Denying Defendant's Motion for Judgment as a Matter of Law**, RE 163, PageID# 1596 – 1610

9. **AmGuard Insurance Company's Motion in Limine No. 1**, RE 108, PageID# 1172 – 1179

10. **Order Denying Defendant's Motion in Limine**, RE 136, PAGE ID # 1388 – 1393

11. **Exhibit and Witness List**, RE 152, PageID# 1482 – 1483

12. **Proposal of Insurance,** (Trial Exhibit 11),  RE 56-3, PageID# 586 – 594

13. **Proposal of Insurance Signature Page,** (Trial Exhibit 10), RE 56-3, PageID# 596

14. **Automatic Sprinkler Cert/Photo,** (Trial Exhibit 4), RE 57-5, PageID# 617 – 618

15. **Policy IVHO038445**, (Trial Exhibit 5), RE 56-3, PageID# 492 – 583

16. **Agency Contract,** (Trial Exhibit 15), RE 39-1, PageID# 418-423

17. **May 13, 2020 Letter to Iva Joy,** (Trial Exhibit 7), RE 57-9, PageID# 717 – 723

18. **Motion for Judgement as a Matter of Law,** RE 155, PageID# 1486 – 1488

19. **Memorandum in Support of Motion for Judgement as  Matter of Law,** RE 156, PageID# 1489 – 1499

20. **Plaintiffs' Response to AmGuard's Rule 50 Motion for Judgement as  Matter of Law,** RE 157, PageID# 1567 – 1574

21. **AmGuard's Reply to Plaintiff's Response to AmGuard's Rule 50 Motion,** RE 162, PageID# 1587-1595

22. **Order Denying Defendants' Motion for Judgement as a Matter of Law**, RE 163, PageID# 1596-1610

23. **Transcript of Trial Proceedings**, R. 166, PageID# 1617 – 1776

24. **Transcript of Trial Proceedings,** R. 167, PageID# 1777 – 2068

25. **Transcript of Trial Proceedings**, R. 168, PageID# 2069 – 2209

26. **Notice of Appeal,** RE 164, PageID# 1611 - 1613